WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Kevin C. Donovan
33 Washington Street
Newark, New Jersey 07102-3017
(973) 624-0800 ph.
(973) 624-0799 fx.
Attorneys for plaintiff,
American General Life Insurance Company

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | Civil Action No: 2:09-cv-5097 |
| vs. | |
| SUSSEX 130 LLP, CANYON FUNDING TRUST, WELLS FARGO BANK, N.A., SCOTT ULVEN, RAMPART AMERICA LLC, MICHAEL STRULOWITZ, and JOHN DOES 1- 10, | **AMENDED COMPLAINT** |
| Defendants. | |

Plaintiff, American General Life Insurance Company ("American General"), having its principal place of business at 2929 Allen Parkway Houston, Texas 77019, by and through its undersigned counsel, and by way of Complaint against the defendants, Sussex 130 LLP, Canyon Funding Trust, Wells Fargo Bank, N.A., Scott Ulven, Rampart America LLC, Michael Strulowitz, and John Does 1-10 (hereinafter collectively referred to as "Defendants") states as follows:

## INTRODUCTION

1.      American General seeks a declaration from this Court that Flexible Premium Adjustable Life Policy U10030194L (hereinafter "the Policy) issued by American General to Sussex 130 LLP c/o Wells Fargo Bank, N.A., (hereinafter "Sussex 130 LLP") with total Coverage in the amount of $10,000,000.00 and insuring the life of Stanley Goldberg ("Goldberg") is void *ab initio* because Sussex 130 LLP lacked insurable interest in the life of Goldberg at the time of application for and issuance of the Policy.   In addition, and/or in the alternative, American General seeks an award of compensatory and exemplary damages arising out of said transaction and American General's subsequent administration and investigation.

2.      In the application for the Policy, defendants fraudulently misrepresented the reason for which the Policy was being sought.   Specifically, defendants represented that the reason for the Policy was to be "Estate Planning," meaning preservation of the insured's purportedly sizeable estate from anticipated estate taxes.   However, none of the defendants at any time relevant to this matter had any intention, expectation or belief that the Policy was to be purchased for purposes of "Estate Planning" or would otherwise inure to the benefit of Goldberg's estate or his natural heirs or any other person or entity possessing an insurable interest in his life.   Rather, defendants at all relevant times knew and understood that the sole purpose of the Policy was to create an illegal wagering contract upon Goldberg's life by ceding all or nearly all controlling and beneficial interest in the Policy to persons and/or entities who are strangers to Goldberg with no insurable interest in his life.   Sussex 130 LLP and its ostensible ownership of the Policy was and is a mere sham as part of common scheme employed by defendants, generally

2

known as Stranger-Originated Life Insurance ("STOLI"), and perpetrated in an attempt to circumvent applicable laws and public policy pertaining to insurable interest. As such, defendants, including Sussex 130 LLP, lacked any insurable interest in the life of Goldberg, and the Policy is, therefore, void *ab initio*.

3.    Each of the defendants knew that all of the relevant representations were false or recklessly disregarded the veracity of the representations, and further knew that the transaction was consummated through fraud and deception, but each defendant nonetheless encouraged, facilitated, aided and abetted, transmitted and/or directly made representations to American General with the intention of defrauding American General into issuing the Policy.

4.    Accordingly, American General demands, together or in the alternative, rescission *ab initio* of the Policy and restitution of American General to its original position prior to the fraud, equitable remedies to include the imposition of constructive trusts with tracing as necessary, restrictions on future conduct, compensatory and exemplary damages arising from the scheme to defraud American General set forth herein, costs of investigation and suit, monetary interest, and attorneys fees.

## JURISDICTION, PARTIES, AND VENUE

5.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties and the amount in controversy exceeding $75,000.

6.    Venue lies within this District under the provisions of 28 U.S.C. § 1391(a) because one or more of the defendants resides within this District and a substantial part of the events and omissions giving rise to the claim occurred within this district.

3

7.     American General is a Texas corporation duly formed under the laws of the State of Texas and having its principal place of business in the State of Texas.

8.     Upon information and belief, Sussex 130 LLP is a limited liability partnership formed under the laws of the State of Minnesota and subject to the ownership and control of its manager, Wells Fargo Bank with an address at 9 6th Street N. & Marquette Avenue MAC, Minneapolis, Minnesota 55479.

9.     Upon information and belief, the partners of Sussex 130 LLP are The Stanley Goldberg Family Irrevocable Trust No. 1 and The Stanley Goldberg Family Irrevocable Trust No. 2.

10.    Upon information and belief, the Stanley Goldberg Family Irrevocable Trust No. 1 is an unincorporated jural entity formed under the laws of the State of Minnesota and subject to the ownership and control of its trustee, Wells Fargo Bank, N.A.

11.    Upon information and belief, the Stanley Goldberg Family Irrevocable Trust No. 2 is an unincorporated jural entity formed under the laws of the State of Minnesota and subject to the ownership and control of its trustee, Wells Fargo Bank, N.A.

12.    The protector of the Stanley Goldberg Family Irrevocable Trust No. 2 is Michael Strulowitz.

13.    Upon information and belief, Canyon Funding Trust is an unincorporated jural entity formed under the laws of the State of Delaware and subject to the ownership and control of its trustee, Wells Fargo Bank, N.A..

14.    Upon information and belief, Wells Fargo Bank, N.A. is a corporation

4

duly formed in the State of South Dakota with its principal place of business in the State of California. Wells Fargo Bank N.A. is the trustee of the Canyon Funding Trust, the trustee of the Stanley Goldberg Family Irrevocable Trust No.1, the trustee of the Stanley Goldberg Family Irrevocable Trust No.2, and the Manager of Sussex 130 LLP.

15.     Upon information and belief, Scott Ulven (hereinafter "Ulven") is the Vice President of Wells Fargo Bank, N.A. and a citizen of the State of Minnesota.

16.     Upon information and belief, Rampart America LLC (hereinafter "Rampart") is a limited liability corporation duly formed under the laws of the State of New Jersey with its principal place of business at One Parker Plaza, Suite 1105, Fort Lee, New Jersey 07024. Rampart America is the agency who submitted the application for the Policy to American General.

17.     Upon information and belief, Michael Strulowitz is a citizen of the State of New Jersey with a business address at Park 80 West, Plaza One, Saddle Brook, New Jersey, 07663. Michael Strulowitz is the agent who submitted the application for the Policy to American General. Mr. Strulowitz is also the Special Manager of Sussex 130 LLP and the protector of the Stanley Goldberg Family Irrevocable Trust No. 1 and the Stanley Goldberg Family Irrevocable Trust No. 2.

18.     Pursuant to the Trust Agreement, the beneficiaries of the Stanley Goldberg Family Irrevocable Trust No. 1 are Goldberg's "children."

19.     Pursuant to the Trust Agreement, the beneficiaries of the Stanley Goldberg Family Irrevocable Trust No. 2 are his "descendants."

20.     Upon information and belief, Beth S. Goldberg is the child and/or descendant of Mr. Goldberg, and is a citizen of New Jersey, residing at 140 Walnut St.,

Englewood, New Jersey, 07631.

21.     Upon information and belief, Michael M. Goldberg is the child and/or descendant of Mr. Goldberg, and is a citizen of New Jersey, residing at 207 Booth Ave., Englewood, New Jersey 07631.

22.     Upon information and belief, Naava S. Goldberg is the child and/or descendant of Mr. Goldberg, and is a citizen of New York, residing at 86 Carlton Road West, Suffern, New York, 10901.

23.     Upon information and belief, Mindy Toba Goldberg is the child and/or descendant of Mr. Goldberg and is a citizen of Connecticut, residing at 147 Euclid Ave., Waterbury, Connecticut, 06710.

24.     Upon information and belief and subject to the completion of American General's continuing investigation, John Does 1-10 are presently unknown individuals and/or entities who have facilitated, encouraged, directly participated in, and/or aided and abetted the fraud as against American General and in the effort to gain from defendants' attempts to circumvent applicable insurable interest laws and public policy.

### STRANGER-ORIGINATED LIFE INSURANCE

25.     Defendants engaged in a scheme, generally referred to as Stranger-Owned or Stranger-Originated Life Insurance ("SOLI "or "STOLI"), or Investor-Owned or Investor-Originated Life Insurance ("IOLI"), which typically involves the initiation and acquisition of outright or beneficial ownership interest in life insurance policies with large face amounts by investors who are strangers to the person insured and who have no insurable interest in the life of the person insured. Such arrangements constitute illegal wagering contracts contrary to statutory law and public policy.

6

26.     The investor strangers directly or indirectly assume the obligation of paying premiums due on the policy in exchange for their interest in it, including the right to all or a substantial portion of the death benefits to be paid when the insured dies.  Of course, the sooner the insured dies, the fewer premiums the investor strangers are required to pay and the higher the return on their investment.  In an attempt to ensure the highest possible rate of return through prompt pay-out of the death benefits, the investor strangers typically recruit elderly individuals to participate in the application process and serve as the proposed insured.

27.     Similarly, the higher the death benefit on the policy, the greater the ultimate return on the investor strangers' investment.  Thus, the net worth and other material information concerning the proposed insured is often inflated or otherwise misrepresented in order to qualify for the most valuable policies with the highest available death benefits at the lowest available premiums.  In some cases, even the health and medical background of the proposed insured is misrepresented.

28.     These arrangements violate state statutory and common law insurable interest laws and are contrary to public policy because the strangers or investors acquire significant speculative economic and pecuniary interests which are best served by the prompt and premature death of the person insured rather than his or her continued life.

29.     The investor strangers have devised various schemes to conceal their lack of insurable interest and circumvent insurable interest laws and public policy.  One such scheme – like the one perpetrated by the defendants in this case – involves the formation of a limited liability partnership and irrevocable life insurance trust ostensibly established by the insured.  Perpetrators of the fraud identify a willing proposed insured, match the

7

proposed insured with investor strangers to fund the premiums required to acquire the policy, arrange for preparation of the necessary documents, and arrange for any other services necessary to conceal the fraud and secure issuance of the policy. The named beneficiary of the policies may or may not be an individual or group of individuals with an ostensible insurable interest in the insured. However, in all cases, the trust or partnership is formed as a sham with the specific present intent and structured to facilitate transfer of the outright or beneficial ownership interest in the life insurance policy after it has been issued.

30. The proposed insured is typically offered something of value, such as immediate cash payments, in exchange for his or her participation in the application process. The proposed insured is often provided false or misleading assurances by the perpetrators of the fraud that the transaction is legal and appropriate. In any event, as in this case, the proposed insured is nevertheless culpable and either intentionally, willfully and wantonly, recklessly or negligently complicit in the fraud because he or she elects to turn a "blind eye" and accept such bald assurances without having made any reasonable independent inquiry as to the propriety or legality of the transaction or the veracity of the representations submitted to the insurance company in his or her name in support of the application for insurance.

## APPLICATION AND MISREPRESENTATIONS

31.    In or around February 2005, Strulowitz and Rampart transmitted to American General an informal application seeking advice as to American General's willingness to consider issuance of a life insurance policy in the amount of $5,000,000 insuring Goldberg.

32.    On or about February 9, 2005, Strulowitz and Rampart transmitted to American General a Part A Life Insurance Application purportedly signed by Goldberg on February 9, 2005 in Atlanta, GA.  The Application Part A sought issuance of Base Coverage in the amount of $10,000,000.00 and Supplemental Coverage in the amount of $10,000,000.00.

33.    On or about February 9, 2005, Strulowitz and Rampart transmitted a Part B Life Insurance Application, reflecting the results of medical interview and examination of Goldberg that purportedly took place on December 12, 2004 in Fort Lee, New Jersey and was purportedly signed by Goldberg at the same time and place.

34.    Question 1 on the February 9, 2005 Application Part A asked for Goldberg's annual income and net worth. In response to Question 1, Goldberg and Strulowitz represented that Goldberg was retired and had a net worth of "$20,000,000.00 + including trusts."

35.    In response to Question 4 on the February 9, 2005 Application Part A, Goldberg and Strulowitz identified the owner of the Policy as the primary proposed insured.

36.    In response to Question 9 on the February 9, 2005 Application Part A, Goldberg and Strulowitz represented that the primary beneficiary of the Policy was the

9

"Estate of Insured."

37.    In connection with the application submitted on February 9, 2005, Strulowitz executed an agent's report stating that "ownership will be a trust/llc in Georgia. Documentation and new part are to follow."

38.    On or about February 23, 2005, Goldberg and Strulowitz executed another Part A Life Insurance Application seeking issuance of the Policy with Base Coverage of $10,000,000. The February 23, 2005 Application Part A purports to have been executed in Atlanta, GA.

39.    Question 1 on the February 23, 2005 Application Part A asked for Goldberg's annual income and net worth. In response to Question 1, Goldberg and Strulowitz represented that Goldberg was retired and had a net worth of "$20,000,000.00 + including trusts."

40.    In response to Question 4 on the February 9, 2005 Application Part A, Goldberg and Strulowitz identified the owner of the Policy as Hampton 130 LLC by Wells Fargo Bank, N.A. as manager, 400 Norseridge Road, Suite 60, Atlanta, Georgia. The relationship to Goldberg was listed as "sole member."

41.    In response to Question 5 on the February 23, 2005 Application Part A, Goldberg and Strulowitz represented that the reason for insurance was estate planning.

42.    In response to Question 9 on the February 23, 2005 Application Part A, the primary beneficiary of the Policy was designated as Hampton 130 LLC by Wells Fargo Bank, N.A. as manager, 400 Norseridge Road, Suite 60, Atlanta, Georgia.

43.    On or about February 28, 2005, American General approved the issuance of a Policy insuring Stanley Goldberg in the amount of $10,000,000.00 and assigned

10

915490.3

policy number U10030194L to the Policy.

44.     On or about February 28, 2005, American General transmitted the approved Policy to Strulowitz and Rampart requesting signatures and payment of the initial premium.

45.     On March 7, 2005, American General received an assignment of the Policy to Canyon Funding Trust c/o Wells Fargo Bank as Trustee.

46.     On May 19, 2005, American General corresponded with Hampton 130 LLC stating the insurance for Goldberg was approved and assigned policy number U10030194L and a letter had been sent to Strulowitz requesting signatures and initial premium.   American General further stated that because those items had not been received, American General's procedures required American General to mark the Policy as not taken.   Therefore, no coverage was in force and no claim for benefits would be honored.   American General further informed Hampton 130 LLC that no coverage was in effect and any temporary life insurance agreement or conditional receipt was thereby no longer in force.

47.     On or about June 15, 2005, American General received a new Part A Life Insurance Application dated June 15, 2005 seeking issuance of the Policy with Base Coverage of $5,000,000.00 and Supplemental Coverage of $5,000,000.00.   The June 15, 2005 Application Part A purports to have been executed in Minneapolis, Minnesota by Strulowitz, Goldberg, and Ulven.

48.     Question 1 on the June 15, 2005 Application Part A asked for Goldberg's annual income and net worth.   In response to Question 1, Goldberg, Strulowitz, Ulven, Sussex 130 LLP, and Wells Fargo Bank represented that Goldberg was retired and had a

11

net worth of "$20,000,000.00 + including trusts."

49.     In response to Question 4 on the June 15, 2005 Application Part A, Goldberg, Strulowitz, Ulven, Sussex 130 LLP, and Wells Fargo Bank identified the owner of the Policy as Sussex 130 LLP c/o Wells Fargo Bank, N.A., 6th Street & Marquette Avenue, N9303-110, Minneapolis, Minnesota 55479. Goldberg was listed as the 100% owner of Sussex 130 LPP and sole member of Sussex 130 LLP.

50.     In response to Question 5 on the June 15, 2005 Application Part A, Goldberg, Strulowitz, Ulven, Sussex 130 LLP, and Wells Fargo Bank represented that the reason for insurance was estate planning.

51.     In response to Question 9 on the June 15, 2005 Application Part A, Goldberg, Strulowitz, Ulven, Sussex 130 LLP, and Wells Fargo Bank designated the primary beneficiary of the Policy as Sussex 130 LLP.

52.     In response to Question 14 on the June 15, 2005 Application Part A, Goldberg, Strulowitz, Ulven, Sussex 130 LLP, and Wells Fargo Bank represented that the premium payor as Sussex 130 LLP c/o Wells Fargo Bank, NA, 6th Street & Marquette Avenue N9303-110, Minneapolis, Minnesota, 55479, Attn: Scott Ulven, Corporate Trust Svc.

53.     By executing the June 15, 2005 Application Part A, Goldberg, Strulowitz, Ulven, Sussex 130 LLP, and Wells Fargo Bank acknowledged and agreed that American General would rely upon the information provided in all parts of the Application when determining whether to issue the Policy. Furthermore, Goldberg, Strulowitz, Ulven, Sussex 130 LLP, and Wells Fargo Bank promised that the information in the Application was true and complete as follows:

12

I have read above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentations contained in this application and relied on by the Company may be used to reduce or deny or void the policy if: (1) it is within the contestable period; and (2) such misrepresentation materially affects the acceptance of the risk...."

54.   On June 15, 2005, Strulowitz executed an Agent's Report requesting that American General date the policy as April 18, 2005 to save age.

55.   On the June 15, 2005 Agent's Report, Strulowitz represented to American General that he was not "aware of any information that would adversely affect any proposed insured's eligibility, acceptability, or insurability."

56.   On or about June 15, 2005, American General received a Part B Life Insurance Application executed on June 15, 2005. The June 15, 2005 Application Part B purports to have been executed by Goldberg and Strulowitz in Minneapolis, Minnesota.

57.   On June 21, 2005, Goldberg underwent a medical interview and examination in Fort Lee, New Jersey. A medical examination was purportedly dated and executed by Goldberg at the same time and place. The doctor who performed the medical interview and examination and dated and executed the medical examination was listed as Dr. Alexander, MD.

58.   In reliance upon all of the foregoing representations, American General executed, issued, and caused to be delivered Policy U10030194L with an Issue Date of April 18, 2005.

59.   On July 20, 2005 receipt and delivery of the Policy was acknowledged by Ulven, Wells Fargo Bank, and Sussex 130 LLP.

915490.3

60.    On or about July 28, 2005, American General received an Assignment of the Policy from Sussex 130 LLP to Canyon Funding Trust c/o Wells Fargo Bank, N.A., as trustee.

61.    On or about July 28, 2005, American General received a "Second Stage Assignment of Life Insurance Policy as Collateral" whereby Canyon Funding Trust purportedly as assignor and duly designated assignee of the Policy, assigned and transferred all of its interest in the Policy to Wells Fargo Bank, N.A., as collateral agent.

62.    On July 29, 2005, American General corresponded with Sussex 130 LLP acknowledging its receipt and recording of the assignment of the Policy to Canyon Funding Trust c/o Wells Fargo Bank, NA as trustee.

63.    Upon information and belief, on November 1, 2008, Goldberg passed away.

64.    On November 18, 2008, American General received a Proof of Death Claimant's Statement executed by Sussex 130 LLP, by Wells Fargo Bank, N.A., as manager, requesting payment of the proceeds.

65.    Upon receipt of the Proof of Death Claimant's Statement, American General requested further information from Sussex 130 LLP and Wells Fargo Bank, in order to process the claim.

66.    On May 27, 2009, Sussex 130 LLP submitted the additional information requested by American General, including a Proof of Death's Claimant Statement executed by Wells Fargo Bank, N.A. as collateral agent, copies of the partnership agreement for Sussex 130 LLP and the trust agreements for each of the partners to the Sussex 130 LLP, namely the Stanley Goldberg Family Irrevocable Trust No. 1 and

14

Stanley Goldberg Family Irrevocable Trust No. 2.

67.     American General incurred costs in connection with the issuance and administration of the Policy and in connection with its investigation of the question of insurable interest.

## DEFENDANTS MISREPRESENTED THE PURPOSE FOR THE INSURANCE

68.     Upon American General's receipt of the documents from Wells Fargo Bank and Sussex 130 LLP, American General subsequently conducted a review and investigation of the application for the Policy.

69.     In the course of its investigation, American General discovered evidence for the first time that neither Sussex 130 LLP, Canyon Funding Trust, nor Wells Fargo Bank ever had at any time relevant to the application for issuance of the Policy, any intention or expectation that any person or entity with an insurable interest in the life of Goldberg would maintain a controlling or beneficial ownership interest in the Policy or the benefits that might become payable thereunder.   Rather, at all times relevant, beginning at or on before the application and continuing including up through and including this date, Strulowitz, Rampart, Ulven, Sussex 130 LLP, Canyon Funding Trust, and Wells Fargo Bank knew and intended that the controlling and/or beneficial ownership interest in the Policy would be sold, surrendered, or otherwise fully encumbered by Sussex 130 LLP, Canyon Funding Trust, and/or Wells Fargo Bank for immediate pecuniary gain through financial transactions with John Does 1 – 10 after the Policy was issued.

70.     Contrary to Strulowitz's, Rampart America's, Ulven's, Sussex 130 LLP's, Canyon Funding Trust's, and Wells Fargo Bank's representations to American General

15

that the Policy was for the purposes of Estate Planning, neither Sussex 130 LLP, Strulowitz, Canyon Funding Trust, nor Wells Fargo Bank ever intended or expected that any proceeds of the policy would be used for Goldberg's estate.

71.     Strulowitz, Rampart, Ulven, Sussex 130 LLP, Canyon Funding Trust, and Wells Fargo Bank did not reveal their present expectations or intentions to sell, transfer and/or otherwise encumber the ownership interests in the Policy at the time of the application or acceptance of delivery of the Policy and payment of the first premium. Rather, Strulowitz, Rampart, Ulven, Sussex 130 LLP, Canyon Funding Trust, and Wells Fargo Bank intentionally concealed their intentions and expectations in order to deceive American General into approving, issuing, and delivering the Policy as applied for.

72.     Because Sussex 130 LLP was formed with the intention and expectation to sell, surrender, or otherwise fully encumber the Policy, Sussex 130 LLP, Canyon Funding Trust, and Wells Fargo Bank lacked an insurable interest in Goldberg's life as of the date on which the Policy was issued.

## COUNT I
### (Lack of Insurable Interest)

73.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

74.     The sole purpose for creation of Sussex 130 LLP was to set up a sham entity with the appearance of insurable interest in the life of Goldberg and to further the efforts of Strulowitz, Rampart, Ulven, Sussex 130 LLP, Canyon Funding Trust, Wells Fargo Bank and John Does 1-10 to circumvent applicable insurable interest rules and public policy.

75.     The application for and purported ownership of the Policy by Sussex 130

915490.3

LLP was merely a sham intended to conceal from American General the lack of insurable interest on the part of defendants who caused the Policy to be issued and delivered, thereby circumventing and violating applicable insurable interest rules and public policy.

76.     Therefore, at all times relevant to the application for the Policy at issue, Sussex 130 LLP lacked any insurable interest in the life of Goldberg. Therefore, the Policy is void *ab initio* and of no force and effect since its inception and American General never has and never will become liable to anyone thereunder.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.     A declaration pursuant to 28 U.S.C. § 2201 that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation and that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position.

b.     In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to

17

surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## COUNT II
### (Material Misrepresentation)

77.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

78.     The response to Question 5 on the June 15, 2005 Application Part A was false and failed to disclose the true reason for the Policy.

79.     The statement of acknowledgement and agreement by virtue of Goldberg's, Strulowitz's and Ulven's signatures on the June 15, 2005 Application Part A for the Policy was false.

80.     The statements of Strulowitz contained in the June 15, 2005 Agent's Report were false.

81.     Goldberg's true intention and reason for seeking issuance of the Policy, which was not disclosed in the June 15, 2005 Application Part A or otherwise, was

18

material to the risk undertaken by American General in issuing the Policy.

82.    American General relied upon all of the statements submitted in support of the application for the Policy.

83.    American General's reliance upon the material misrepresentations and omissions in the application and/or in connection with the application was reasonable.

84.    If Goldberg, Strulowitz, and Ulven had fully and completely disclosed Goldberg's true reasons for seeking issuance of the Policy, or if the same facts had otherwise been made known by them before or at the time of issuance or delivery of the Policy, American General would not have executed, issued, or delivered the Policy or accepted premiums for the Policy.

85.    Because of the foregoing material misrepresentations and failure to disclose, the Policy is void *ab initio* and of no force of effect since its inception, and American General never has been and never will become liable to anyone thereunder.

86.    American General has incurred substantial expenses and costs in connection with, among other things, its underwriting and issuance of the Policy, payment of commissions and fees in connection with issuance of the Policy, administration and servicing of the Policy, investigation of the misrepresentations, fraud, and concealment outlined above, and commencement of the present litigation to enforce its rights.

87.    In light of the foregoing damages, expenses, and costs incurred by American General, American General should be permitted to retain the premiums paid for the Policy as an offset against such damages and costs. Without such retention and/or offset, the equitable remedies sought herein, including restitution, would be rendered

19

futile or impossible.

88.     Notwithstanding the foregoing, American General stands ready, willing, and able to refund or otherwise make payment of all or any portion of the premiums paid for the Policy to the current owner of the Policy or as directed by this Court in accordance with American General's demand for rescission of the Policy and restitution of the parties to their pre-contract positions insofar as it is possible and equitable.

89.     Accordingly, American General hereby makes constructive tender of the premiums paid for the Policy and respectfully seeks this Court's direction as to actual payment of the same.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.      A declaration pursuant to 28 U.S.C. § 2201 that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position, and that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.      In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from

20

915490.3

inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## COUNT III
### (Fraud)

90.     American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

91.     The misrepresentations and failure to disclose the true reasons for the Policy set forth in the Application were knowingly made, done, encouraged, aided and/or abetted by Strulowitz, Ulven, Sussex 130 LLP, Canyon Funding Trust, Wells Fargo Bank and John Does 1-10 with intent to deceive American General into issuing and delivering the Policy.

92.     Strulowitz's misrepresentations contained in the June 15, 2005 Agent's Report were made and done knowingly by Strulowitz with the intent to deceive American

21

General into issuing and delivering the Policy.

93.     The foregoing fraudulent misrepresentations did, in fact, induce and deceive American General to its detriment to issue and deliver the Policy.

94.     If Strulowitz, Rampart, Ulven, Sussex 130 LLP, Canyon Funding Trust, and Wells Fargo Bank had fully and completely disclosed the true reason for the Policy prior to or at the time of the issuance or delivery of the Policy, American General would not have executed, issued, or delivered the Policy, nor would American General have accepted premiums for the Policy.

95.     Because of the intentional and fraudulent misrepresentations and concealment, the Policy is void *ab initio* and of no force and effect since its inception and American General never has nor will American General become liable to anyone thereunder.

96.     American General has sustained damages as a result of the misrepresentations, non-disclosure and/or concealment.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.     A declaration pursuant to 28 U.S.C. § 2201 that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation.

b.     In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid

915490.3

under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation and that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position.

c.    An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.    Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.    Such other and further relief as may be available to American General which the Court deems to be equitable and just.

### COUNT IV
### (Civil Conspiracy)

97.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

98.    Each of the defendants engaged in, facilitated, encouraged, aided and abetted and/or otherwise acted in furtherance of an overall scheme and conspiracy as

23

detailed herein, all or portions of which scheme and conspiracy were known to each of each of them.

99.   Some or all of the defendants together conspired and agreed to devise and execute a scheme or plan to solicit elderly persons, and to promote and facilitate the procurement of life insurance policies from insurers, including American General, for which said applicants could not qualify based upon their true net worth, income, reasons for purchasing the insurance, and/or because of state insurable interest laws, which defendants endeavored to improperly circumvent or avoid.

100.   Each defendant, individually and collectively, engaged in deceptive and fraudulent acts as more fully set forth elsewhere in this document in furtherance of the conspiracy, including but not limited to; meeting together for purposes of planning and executing the conspiracy;   making, adopting, ratifying or consciously failing to correct misrepresentations of material information in insurance applications with the intent to defraud insurers; causing, promoting, encouraging, facilitating, or aiding and abetting third parties in making, adopting, ratifying or consciously failing to correct misrepresentations of material information in insurance applications with the intent to defraud insurers; providing or obtaining financing for the deceptive and fraudulent transaction; creating or causing to be created, authorizing, executing and otherwise promoting a sham insurance trust and or other artifices to temporarily hold ownership interest in the ill-gotten insurance policies.

101.   American General has incurred substantial harm as a result of defendants' conspiracy, including but not limited to, monetary damage and exposure to potential current or future legal liability resulting from issuance of the illegal policy,

24

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.      A declaration pursuant to 28 U.S.C. § 2201 that the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position.

b.      In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly

and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.    Such other and further relief as may be available to American General which the Court deems to be equitable and just.

## COUNT V
### (Declaratory Relief)

102.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

103.    An actual and justiciable controversy has arisen and now exists between American General and defendants concerning their respective rights and duties under the Policy.

104.    American General contends that because Sussex 130 LLP lacked any insurable interest in the life of Goldberg at the time the Policy was applied for and issued, the Policy is void *ab inito* and of no force and effect since its inception, and American General never has and never will become liable to anyone thereunder.

105.    American General further contends that because of the material and fraudulent misrepresentations and concealments regarding the reason for the Policy, the Policy is void *ab inito* and of no force and effect since its inception, and American General never has and never will become liable to anyone thereunder.

106.    A declaration is necessary and appropriate at this time in order that American General may ascertain and know its rights and obligations under the Policy.

WHEREFORE, American General demands judgment in its favor and against Defendants, jointly and severally, as follows:

a.    A declaration pursuant to 28 U.S.C. § 2201 that the Policy is void *ab initio*

26

915490.3

and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody and control for cancellation and that American General is entitled to keep all or a portion of the premiums paid under the Policy as offset against costs, fees and expenses incurred by American General on account of defendants' fraudulent conduct as necessary to restore American General to its pre-contract position.

b.      In the alternative, a declaration pursuant to 28 U.S.C. § 2201 that upon American General's deposit with the Court of the total amount of premiums paid under the Policy, the Policy is void *ab initio* and of no force and effect from inception, and that defendants have no interest therein; that the Policy be canceled and rescinded as of the date of its inception; and that defendants be ordered to surrender to American General the original and all copies of the Policy in their possession, custody, and control for cancellation.

c.      An order requiring defendants, jointly and individually, to reimburse American General for and/or permitting American General to offset its cost associated with the underwriting, issuance, and administration of the Policy together with its cost of investigation, costs of suit and attorneys fees;

d.      Judgment in favor of American General and against defendants, jointly and individually, for compensatory damages, punitive damages, costs of suit and attorneys fees;

e.      Such other and further relief as may be available to American General

27

which the Court deems to be equitable and just.

## COUNT VI
### (Breach of Contract Against Strulowitz and Rampart)

107.   American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

108.   Strulowitz and Rampart were appointed and authorized to solicit and submit to American General applications for life insurance by virtue and subject to the terms and provisions of a valid and enforceable contract.

109.   Pursuant to the terms and provisions of said contract, Strulowitz and Rampart owed to American General a duty to submit to American General only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Strulowitz and Rampart genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures and otherwise consistent with law and public policy.

110.   Strulowitz and Rampart breached their contract with American General.

111.   As a direct and proximate cause of Strulowitz's and Rampart America's breach of their contract with American General, American General has been damaged.

WHEREFORE, American General demands judgment in its favor and against Strulowitz and Rampart America, jointly and severally, for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

915490.3

## COUNT VII
### (Fiduciary Duty as to Strulowitz and Rampart)

112.   American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

113.   Pursuant to the terms and provisions of the contract entered into between and among American General and Strulowitz and Rampart, Strulowitz and Rampart owed to American General a fiduciary duty to submit to American General only those applications for life insurance that Strulowitz and Rampart genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures.

114.   By virtue of the relationship between and among American General and Strulowitz and Rampart, and Strulowitz's and Rampart's superior position and ability to evaluate and assess the eligibility, acceptability, insurability, and suitability of proposed insureds and appropriateness of transactions to be presented to American General for underwriting, Strulowitz and Rampart owed to American General a fiduciary duty to submit to American General only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Strulowitz and Rampart genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures and otherwise consistent with law and public policy.

115.   Strulowitz and Rampart breached their fiduciary duty to American General.

116.   As a direct and proximate cause of Strulowitz's and Rampart's breach of their fiduciary duty to American General, American General has been damaged.

117.   WHEREFORE, American General demands judgment in its favor and

915490.3

against Strulowitz and Rampart, jointly and severally, for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

## COUNT VIII
### (Negligence as to Strulowitz and Rampart)

118.    American General hereby repeats and reasserts each of the allegations contained in each of the foregoing paragraphs as if fully set forth at length.

119.    Strulowitz and Rampart owed to American General a duty of care in executing their obligations as duly appointed independent insurance brokers, including but not limited to the duty to solicit and submit for underwriting only those applications for life insurance on proposed insureds that are eligible, acceptable and insurable and that Strulowitz and Rampart genuinely believed to be suitable and appropriate in accordance with American General's practices, policies, and procedures, and otherwise consistent with law and public policy.

120.    Strulowitz and Rampart breached their duty of care to American General.

121.    Strulowitz and Rampart maliciously, willfully, wantonly, and recklessly disregarded their obligations to American General and the welfare of American General in breaching their duty of care to American General.

122.    As a direct and proximate cause of Strulowitz's and Rampart's breach of their fiduciary duty to American General, American General has been damaged.

915490.3

WHEREFORE, American General demands judgment in its favor and against Strulowitz and Rampart America, jointly and severally, for compensatory damages, punitive damages, costs of suit and attorneys fees, and interest, together with any and all other legal and or equitable relief that this Court may deem just and proper.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Plaintiff, American General Life Insurance Company

By: _____
Kevin C. Donovan

Dated: January 4, 2010

31